# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JOHN PATRICK DICKINSON                                                  PETITIONER

v.                                     NO. 5:12CV00259 BSM/HDY

RAY HOBBS, Director of the                                          RESPONDENT
Arkansas Department of Correction

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to these findings and recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendation. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

-1-

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

<u>RECOMMENDATION</u>

In May of 2005, petitioner John Patrick Dickinson ("Dickinson") was convicted in Craighead County, Arkansas, Circuit Court of capital murder and attempted first degree murder. He was sentenced for the offenses to the custody of respondent Ray Hobbs ("Hobbs"), the Director of the Arkansas Department of Correction.

Dickinson appealed his convictions to the Arkansas Supreme Court with the assistance of attorney Bill Stanley ("Stanley") and challenged the denial of a motion to suppress a firearm. The state Supreme Court found no reversible error and affirmed Dickinson's convictions. <u>See</u> <u>Dickinson v. State</u>, 367 Ark. 102, 238 S.W.3d 125 (2006). The state Supreme Court issued a mandate on his appeal in July of 2006.

In September of 2006, Dickinson filed a trial court petition for post-conviction relief with the assistance of attorney Angela Gray ("Gray"). Dickinson maintained in the petition that Stanley provided ineffective assistance of counsel on direct appeal and offered the following three reasons why: (1) Stanley failed to challenge the sufficiency of the evidence to support Dickinson's convictions, (2) Stanley failed to challenge Dickinson's "illegal seizure" and the trial court's denial of a motion to suppress on that ground, and (3) Stanley failed to challenge the trial court's refusal to admit evidence pertaining to an offer made by Dickinson and another suspect to take a polygraph test. The trial court denied Dickinson's petition and, in doing so, noted that attorney Lorie Whitby ("Whitby") had replaced Gray as Dickinson's attorney of record.

Dickinson appealed the denial of his petition for post-conviction relief and did so without the assistance of counsel. When he failed to "tender the record to the [state Supreme Court] within ninety days of the date of the notice of appeal," see Dickinson v. State, 2008 WL 4958291 at 1 (Ark.S.Ct. November 20, 2008), he filed a motion for rule on the clerk. The motion was eventually denied, and his appeal was dismissed. See Id. A subsequent motion for reconsideration was denied by the state Supreme Court. See Dickinson v. State, 2009 WL 476163 (Ark.S.Ct. February 12, 2009).

In March of 2009, Dickinson filed a pro se petition for writ of habeas corpus in Lincoln County, Arkansas, Circuit Court. In the petition, he advanced the following three claims for relief: (1) the evidence supporting his convictions is insufficient to establish his guilt, (2) evidence was obtained by the State of Arkansas in violation of his Fourth Amendment right, and (3) he was charged by information rather than by indictment. His petition was subsequently denied.

Dickinson appealed the denial of his petition to the state Supreme Court and did so without the assistance of counsel. The state Supreme Court found no reversible error and affirmed the denial of his petition. See Dickinson v. Norris, 2011 WL 4635034 (Ark.S.Ct. October 6, 2011).

In July of 2012, Dickinson filed the pro se petition at bar pursuant to 28 U.S.C. 2254. In the petition, he advanced what appeared to be one claim for relief, that being, his attorney's alleged abandonment of him during the prosecution of the petition for post-conviction. He supports his claim with the following representations:

In 2007, through the Law Office's of Hamilton, Colbert and Gray, LLP, Jonesboro, Arkansas, his retained Attorney Angela B. Gray initiated a Petition for relief pursuant to Arkansas Rules of Criminal Procedure. Rule 37.1. The trial court subsequently denied Petitioner's State Post-Conviction Petition. Petitioner filed a Notice of Appeal in the Circuit Court trying to get the Circuit Clerk to designate the record on Appeal. Subsequently the 90 day period Petitioner had to file the Appeal ran out. Several letters were written asking the Clerk's office to comply with Arkansas Supreme Court Procedure Rule 7 duties of the Clerk's office to no-avail.

Petitioner now seeks federal habeas relief under <u>Maples v. Thomas</u>, 132 S.Ct. 912 (2012). … Petitioner's failure to timely Appeal the State's trial Court's Order denying his rule 37 Petition for Post-Conviction relief because his paid Attorney Angela B. Gray abandoned Petitioner without notice after Petitioner was sent to prison.

<u>See</u> Document 1 at 5. Liberally construing Dickinson's <u>pro se</u> petition, it appears that he is seeking to have the federal courts entertain the three claims he raised in his petition for post-conviction relief, claims the state Supreme Court never had an opportunity to address because he was allegedly abandoned by his attorney during the prosecution of the petition for post-conviction relief.

Hobbs filed a response to the petition and maintained that it should be dismissed because it was not timely. Alternatively, he maintained that "the petition entirely fails to assert any cognizable claim for relief …" <u>See</u> Document 7 at 3.

Before giving serious consideration to Hobbs' assertions, the undersigned invited Dickinson to file a reply in which he addressed Hobbs' assertion. Dickinson accepted the invitation and submitted a reply that appeared to support the undersigned's construction of his initial submission.

The undersigned has reviewed the parties' submissions. Dickinson's petition appears to be barred by limitations. Rather than explore that issue in detail, though, the undersigned finds it easier to identify other reasons why his petition should be dismissed.

First, Dickinson never presented the claim at bar to the state courts of Arkansas.[1] Specifically, he never presented the state courts with an opportunity to address his claim that he was abandoned during the prosecution of his petition for post-conviction relief. When could he have raised the claim? At a minimum, he could have offered it in support of his motion for rule on the clerk or in support of his motion for reconsideration. Instead, he did nothing.

Alternatively, Dickinson has offered no facts to substantiate his assertion that he was abandoned by his attorney during the prosecution of his petition for post-conviction relief. He was represented by Gray when the petition was filed and by Whitby when the trial court denied the petition. At some point during the subsequent appeal, Dickinson came to represent himself. The circumstances of how and why he came to represent himself are not clear as he has failed to offer any facts. Thus, it is impossible to know whether he was abandoned on appeal.[2]

---

[1]

Wainwright v. Sykes, 433 U.S. 72 (1977), provides that a federal court should not consider a claim if the petitioner was aware of it but failed to pursue it to a final determination in state court. The exception to the rule permits the claim to be considered if the petitioner can show cause and prejudice. Although Hobbs did not specifically raise the procedural bar issue, the undersigned has the discretion to consider it sua sponte. See King v. Kemna, 266 F.3d 816 (8th Cir.2001), cert. denied, 535 U.S. 934 (2002).

[2]

Permitting Dickinson to amend the petition at bar so that he could alleged facts would be pointless because it is clear that his underlying claims, i.e., the claims in his petition for post-conviction relief, have no merit.

Notwithstanding the foregoing, the undersigned assumes that any procedural irregularity can be excused, that Dickinson was indeed abandoned by his attorney, and the abandonment violated his Sixth Amendment right to counsel. Were Dickinson accorded the relief he ultimately seeks, i.e., the state Supreme Court's consideration of the claims he raised in his petition for post-conviction relief, he could not prevail on the claims as they are simply without merit.

Dickinson offered three reasons in his petition for post-conviction relief why Stanley failed to provide adequate representation. First, Dickinson maintained that Stanley failed to challenge on direct appeal the sufficiency of the evidence to support the convictions. With regard to that claim, the trial court found the following:

> The [trial court] can conclude that the sufficiency of the evidence was more than abundant. There is eyewitness testimony of the victim that survived multiple shootings that … Dickinson was the perpetrator. That alone could have been sufficient to convict him but if you take it a step further there is also the issue of the Glock .40 caliber pistol. That makes the evidence in the case overwhelming as to guilt. …

See Document 7, Exhibit 3 at 2. Although the state Supreme Court never directly addressed the issue, it did recount the facts supporting Dickinson's convictions when it addressed his direct appeal. See Dickinson v. State, 238 S.W.3d at 126-127. Those facts establish that the evidence of his guilt is overwhelming. See Jackson v. Virginia, 443 U.S. 307 (1979) (viewing evidence in light most favorable to prosecution, could any rational trier of fact have found essential elements of crime beyond a reasonable doubt).

Second, Dickinson maintained that Stanley failed to challenge on direct appeal Dickinson's "illegal seizure" and the trial court's denial of a motion to suppress on that ground.[3] With regard to that claim, the trial court found the following:

> There was no seizure of the person. He was contacted by his father and another family member, who just happened to be a police officer, and their interest was to protect his well-being from possible consequences of an apprehension by officers based upon this incident, and that they were motivated in his best interest.
>
> Whether or not they told him it was a homicide I don't think matters a whole lot. They certainly told him at two o'clock in the morning that he was needed in reference to an incident that the police were about to come and talk to him about. He was even told by his father and cousin–who he had to know was a police officer–that he didn't have to go, but he told them he didn't have anything to hide, and he chose to go to the police department.
>
> Its further evident that at the police department his cousin and father had no involvement whatsoever in the questioning of … Dickinson, that he was candidly and openly advised of his rights. He now asserts–although it wasn't asserted some time ago at trial–that in hallway conversation one of the officers might have asked him whether or not he had a firearm. That wasn't before the Court at the time and is only now before the Court at this time. The court does not put a whole lot of faith in that statement.

---

[3]

Dickinson's claim is rooted in the following assertion made by him:

… [Dickinson's] father, Sandy Dickinson, and cousin, Arkansas State Police Lieutenant Rick Dickinson, came to [Dickinson's] home in the early morning hours of May 13, 2004. [He] was asked to accompany the officer[s] to the Marmaduke Police Department to discuss an incident in Rector occurring earlier that evening in which two people had been shot. … [Dickinson] was told that he could either accompany his father and Lieutenant Dickinson to the Police Department, or the deputies would come and take him in. In that circumstance, while [Dickinson] was not placed under arrest …, [he] had no real choice, and he was compelled to go with the officer[s] …

See Document 7, Exhibit 2 at 5.

> After a period of time-his father suggested approximately an hour-he was returned to his home, clearly suggesting that he was not under restraint, he was not compelled to go there forcibly or by threat. In fact he was not even brought to the station by any effort or action on the part of law enforcement. It was his family. It is obvious that whatever statement he gave-I suppose it was used at trial-he apparently denied or did not implicate himself in the shooting but suggested some other person might have done it. He also acknowledged that he had a .40 Glock pistol and that they were welcome to come examine it.
>
> Later (some two hours), officers came to his residence and inquired about the firearm. They allowed him to voluntarily go to the truck on his own and return with a pistol, which they believed at that time was involved in a homicide. Obviously, … Dickinson did that voluntarily and of his own free will and provided the weapon that ultimately became the subject of a suppression hearing. The trial court ruled that it was admissible. The Supreme Court ruled it was admissible. Apparently, it was identified as the weapon used in the shooting.
>
> I find the suggestion that he was illegally seized in violation of [his] … Fourth Amendment rights … to be without merit.

See Document 7, Exhibit 3 at 2-4. Although the state Supreme Court never directly addressed the issue, it did recount the facts surrounding Dickinson's decision to accompany his father and cousin to the Marmaduke Police Department when it addressed his direct appeal. See Dickinson v. State, 238 S.W.3d at 126-127. Those facts establish that he voluntarily accompanied his father and cousin to the police department. See Florida v. Bostick, 501 U.S. 429 (1991) (for encounter to constitute seizure, court must consider circumstances surrounding encounter to determine whether police conduct would have communicated to reasonable person that he was not free to decline police request or terminate encounter).

Last, Dickinson maintained that Stanley failed to challenge on direct appeal the trial court's refusal to admit evidence pertaining to an offer made by Dickinson and another suspect to take a polygraph test. With regard to that claim, the trial court found the following:

> The Court finds that any polygraph evidence is inadmissible and that it is not an issue and that appellate counsel properly refused to appeal the ruling of the trial court.

See Document 7, Exhibit 3 at 4. The state Supreme Court never addressed the issue, directly or otherwise. Nevertheless, it is clear that the issue has no merit. "Arkansas law prohibits the admission of polygraph test results, except upon a written stipulation of the parties." See Hayes v. State, 298 Ark. 356, 767 S.W.2d 525 (1989). There is no evidence that the parties entered into a written stipulation to admit the results of any polygraph test.

Given the foregoing, the undersigned recommends that Dickinson's petition be dismissed. All requested relief should be denied, a certificate of appealability should be denied in accordance with Rule 11(a) of the Rules Governing Section 2254 Cases In The United States District Courts, and judgment should be entered for Hobbs.

DATED this ___16___ day of October, 2012.

_____
UNITED STATES MAGISTRATE JUDGE